IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-002076-RBJ

REIDUN CORRAL CREAMER,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

ORDER REMANDING TO THE SOCIAL SECURITY ADMINISTRATION

    This matter is before the court on review of the Social Security Administration (SSA) Commissioner's decision denying claimant Reidun Corall Creamer's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court GRANTS Ms. Creamer's application (ECF No. 12) and REMANDS for further proceedings not inconsistent with this opinion.

## I.    BACKGROUND

### A.  Factual Background

    Ms. Creamer (the claimant) was born on May 15, 1968, making her 49 on the date of her DBI and SSI applications. Administrative Record (AR), ECF No. 12 at 26. Ms. Creamer suffers from systemic lupus erythematosus (lupus), idiopathic thrombocytopenic purpura, neuropathy, obesity, depression, anxiety, and other physical and mental ailments. AR 18. She takes medications to control these ailments. *See* AR 43–55. Despite her medication, she gets lupus

flares which cause her to ache, and she has physical difficulty standing or walking for too long. AR 44–45.

Ms. Creamer lives with her aging parents. AR 63–64. They recently moved into a new ground-floor apartment after an unsettled period in which they lived in a camper. AR 60–63. The household also consists of two dogs and a ferret, pets that Ms. Creamer loves deeply and helps care for. AR 64–65. Ms. Creamer's mother and father have their own physical limitations, so Ms. Creamers helps around the house. AR 63–64.

Ms. Creamer previously worked as a salon receptionist and hotel hostess. AR 42–43. She left both jobs due to medical difficulties with her lupus. *Id.* She then worked as a cashier but testified that she had a difficult time meeting the physical demands of that job because of her neuropathy and had to quit. AR 41–42. Because of her previous employment, Ms. Creamer meets the insured status requirements of sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i), 423; *see also* AR 18. Ms. Creamer has not engaged in substantial gainful activity since the alleged onset of her disability, July 8, 2017. AR 18.

## B. Procedural Background

Ms. Creamer applied for SSI benefits on March 9, 2018 and DBI on May 4, 2019. AR 15. In both applications, Ms. Creamer alleged a disability beginning on July 8, 2017. After initial denial of her application, Ms. Creamer received a hearing before an Administrative Law Judge (ALJ) on June 14, 2019. AR 37 *et seq.* The ALJ denied Ms. Creamer's application on July 25, 2019. AR 12. The Appeals Council (AC) confirmed denial on May 18, 2020, making the ALJ's decision the final position of the Commissioner of Social Security. AR 1. On July 16, 2020 Ms. Creamer filed a timely appeal in this Court. ECF No. 1.

### C. The ALJ Decision

The ALJ found first that Ms. Creamer met the insured status requirements of the Social Security Act. AR 18. Next, the ALJ evaluated the evidence of Ms. Creamer's alleged disabilities according to the SSA's standard five-step process. AR 16. At step one, the ALJ found that Ms. Creamer had not engaged in substantial gainful activity since the date of her alleged disability's onset. AR 18. At step two, the ALJ found that Ms. Creamer suffered from six severe impairments: lupus, idiopathic thrombocytopenic purpura, neuropathy, obesity, depression, and anxiety. *Id.* The ALJ found that the claimant's alleged chronic obstructive pulmonary disease (COPD), laryngitis, and degenerative disc disease were non-severe impairments. *Id.* She stated that, because the claimant had not received treatment for the respiratory diseases after the alleged disability onset date and received treatment for the degenerative disc disease only temporarily after a fall, the evidence did not establish that those three conditions caused significant ongoing work-related functional limitations. *Id.*

At step three, the ALJ found that Ms. Creamer did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 18–20. The ALJ began her analysis by noting that the claimant's obesity likely has some impact on her functioning even though no medical record specified the obesity's interaction with claimant's other impairments. AR 19. The ALJ proceeded to analyze four categories of mental impairments (known as the paragraph B criteria). AR 19–20. The ALJ found mild limitations in the claimant's ability to "understand[], remember[], or apply[] information," "interact[] with others," and "adapt or manage herself, and a moderate limitation in the claimant's ability to "concentrate, persist, or maintain pace." *Id.* The ALJ contrasted the claimant's general statements about her mental

capacities with testimony about the claimant's ability to complete specific tasks and medical evidence. *Id.*

The ALJ next proceeded to step four where she found that Ms. Creamer had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). AR 20. At this step, the ALJ first identified physical and mental impairments that could reasonably be expected to produce Ms. Creamer's symptoms. AR 21. The ALJ detailed the claimant's challenges and abilities, describing various psychiatric and medical appointments and citing the claimant's testimony at the administrative hearing. AR 21–23.

The ALJ then evaluated the intensity, persistence, and limiting effects of Ms. Creamer's symptoms. There, the ALJ found Ms. Creamer's testimony "not entirely consistent with medical testimony and other evidence in the record" and therefore found that her alleged pain and physical symptoms did not support a disabling degree of limitation. AR 21. The ALJ considered Ms. Creamer's symptoms in light of the various medical diagnoses and outlined why she found each diagnosis persuasive or unpersuasive. AR 21–26. A recurring theme was the absence of treatment or exam results that would be expected in the presence of disabling limitations. The ALJ noted that the claimant had not been seen in the ER for acute pain, did not use pain-relieving braces or walking assistance devices, and did not have serious complications from lupus. AR 22. The claimant's exams showed tenderness, limited physical abilities, and mental health issues, but also showed many normal functions and did not support a conclusion that her symptoms were "as persistent or limiting as the claimant's allegations might suggest." AR 22–23. The ALJ articulated three reasons not to fully credit the claimant's testimony about her limitations: Ms. Creamer's self-reported symptoms could not be objectively verified, could not necessarily be attributed to her medical condition, and appeared inconsistent with activities the

claimant described doing.  AR 23.  The ALJ concluded this section by assessing individual medical opinions.  She found persuasive or partially persuasive opinions indicating the claimant had the capacity to perform medium work and found unpersuasive opinions concluding that the claimant had severe physical and mental limitations.  AR 24–26.

The ALJ then found that Ms. Creamer could perform past relevant work as a receptionist.  AR 26.  The ALJ relied on the vocational expert's (VE) testimony that the claimant could perform this work and evidence that the past work was substantial, gainful, sufficiently lengthy, and sufficiently recent.  *Id.*  The ALJ then made the alternative step-five finding, based on the VE's testimony, that that the national economy contained sufficient jobs within the claimant's ability to perform.  AR 26–27.  The ALJ listed the jobs of information clerk, parking lot attendant, and storage facility clerk as examples.  AR 27.

## II.   STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

This appeal is based upon the administrative record and the parties' briefs.  In reviewing a final SSA decision, the District Court examines the record and determines whether it contains substantial evidence to support the decision and whether SSA applied correct legal standards.  *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  "[T]he threshold for evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Id.* (internal quotations omitted). The District Court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

### III.    DISCUSSION

Ms. Creamer challenges the ALJ's decision on four grounds. ECF No. 17. First, she charges that the ALJ erred in finding the opinions of a Doctor of Osteopathic Medicine, Dr. Gregory Ales, unpersuasive. *Id.* at 8–15. Second, she contends that the ALJ erroneously found persuasive the opinion of a different doctor, Dr. Rosemary Greenslade, M.D. *Id.* at 14–16. Third, she claims that the ALJ incorrectly found that the claimant could perform work requiring interaction with others. *Id.* at 16–17. Finally, she claims what the ALJ did not give sufficiently specific reasons justifying the weight she gave Dr. Ales's opinion. *Id.* at 17–18. I will consider the arguments about Dr. Greenslade's and Dr. Ales's opinions together. My conclusion there vitiates the need to consider claimant's other arguments.

#### A.    **The ALJ's Consideration of Dr. Greenslade's and Dr. Ales's Opinions**

Ms. Creamer's arguments regarding the weight of various medical opinions are threefold: First, Dr. Greenslade's opinion should not have been persuasive. *Id.* at 15. Second, Dr. Ales's opinion should have been persuasive. *Id.* at 8–14. Finally, the ALJ failed to follow regulations

applicable when two equally persuasive medical opinions differ.  *Id.* at 16.  This final argument is contingent upon the success of one of the first two arguments.

The parties agree that an ALJ is required to assess the persuasiveness of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  20 C.F.R. 404.1520c(c)(1)-(5); ECF No. 17 at 16; ECF No. 18 at 8–9.  The ALJ must explain how she considered the first two factors, supportability and consistency, but need explain her consideration of factors three through five only if she finds two or more medical opinions equally persuasive, that is, equally well-supported and consistent with the record.  20 C.F.R. 404.1520c(b)(2).

Dr. Greenslade concluded that Ms. Creamer had no functional limitations.  AR 564.  The ALJ found this opinion persuasive.  AR 24.  She explained that she found Dr. Greenslade's opinion supportable because it was rendered after a physical examination of the client and consistent with other examination findings.  *Id.*  She concluded, however, that based on Ms. Creamer's self-reported pain and fatigue, it was "prudent to restrict the claimant" to light exertional work with reduced standing/walking and no heavy lifting.  *Id.*

Ms. Creamer takes issue with the ALJ's supportability and consistency determinations.  She argues that the ALJ should not have found Dr. Greenslade's opinion supportable because Dr. Greenslade had not been provided with medical records showing the claimant's lupus and neuropathy, impairments that "affect[ Ms. Creamer] on a daily basis."  ECF No. 21 at 2.  She further argues that the ALJ should not have found Dr Greenslade's opinion consistent with other evidence in the record because it conflicted with Dr. Ales's opinion and the claimant's own testimony.

This Court concludes that the ALJ erred in calling Dr. Greenslade's opinion persuasive—the record supports only a finding of partially persuasive.[1] It was not improper for the ALJ to find Dr. Greenslade's opinion supportable because it was based on a "thorough physical examination." AR 24. Although Dr. Greenslade did not have medical records about Ms. Creamer's lupus and neuropathy, Ms. Creamer did self-report those diagnoses to Dr. Greenslade and disclosed the medications she was taking to control those conditions. AR 558–59 ("CHIEF COMPLAINT: 1. Connective tissue disorder/lupus with polyneuropathy," *id.* at 558, "[Ms. Creamer] states that she was told she has neuropathy related to lupus . . . ," *id.* at 559).

The ALJ's finding Dr. Greenslade's opinion consistent with other evidence is less well supported. The ALJ noted that, while not every piece of evidence aligned with Dr. Greenslade's conclusion, a substantial number of medical exams that did. I could not find those exams. The ALJ mentions that Dr. Greenslade's conclusion matched other "normal exams." But the exams described as "normal" did not evaluate the impairments relevant to Dr. Greenslade's conclusion. *See* AR 22 (discussing a number of "normal exams" and citing, *inter alia*, AR 407 (normal cardiovascular health); AR 425 (normal pulmonary health); AR 292 (normal range of motion); AR 590 (same); AR 431 (normal ear, nose, and throat functions)). Dr Greenslade evaluated Ms. Creamer's ability to stand, walk, and otherwise move around. No cache of normal exams supports this conclusion.

The ALJ seemed to recognize that the supportability and consistency factors did not decisively weigh in favor of finding Dr. Greenslade's conclusion persuasive. The ALJ adjusted downward by placing "pruden[t]" limits on Ms. Creamr's RFC. Dr. Greenslade opined that Ms.

---

[1] Because the ALJ "prudent[ly]" imposed substantial restrictions unsupported by Dr. Greenslade's conclusion that Ms. Creamer had "no limitations," it seems that, in practice, the ALJ may have found Dr. Greenslade's opinion partially persuasive. To the extent the ALJ reached this conclusion, the Court finds it sufficiently supported.

Creamer has *no* functional limitations—a far cry from an opinion justifying only light work. It seems curious that the ALJ began her analysis by calling Dr. Greenslade's opinion persuasive. This conclusion was unsupported by the record. To the extent the ALJ functionally found Dr. Greenslade's opinion partially persuasive, such a conclusion would be sufficiently supported by the record.

The ALJ found an opinion by Dr. Ales unpersuasive. AR 24. Dr. Ales found that the claimant could rarely lift more than 10 pounds, could only stand/sit less than four hours a day, and would miss four or more days of work per month. AR 361–64. The ALJ questioned the supportability of Dr. Ales's opinion because he had not examined Ms. Creamer when rendering the opinion, and his other treatment records indicate "stable findings on exams." AR 24. The ALJ found Dr. Ales's opinion inconsistent because it conflicted with the claimant's testimony about her physical abilities and other medical records about the efficacy of her pain management. *Id.* Ms. Creamer contests every step of the supportability and consistency determinations on appeal. ECF No. 17 at 8–15.

This Court does not find substantial evidence supporting the ALJ's decision to find Dr. Ales's opinion unpersuasive. The ALJ's decision to give less weight to a medical opinion not deriving from a physical exam was reasonable. Dr. Ales, however, has a history of treating the patient and would have been familiar with her history and symptoms. In the previous exam cited by the ALJ, Dr. Ales had noted that while claimant's medication was "significantly improving her pain," she was still bothered by it "on a daily basis." AR 379. He decided on that date to alter her medication to try achieving better results. *Id.* The opinion that the ALJ found unpersuasive was rendered six months later, after Dr. Ales had seen the (in)effectiveness of Ms. Creamer's new medication.

Moreover, Dr. Ales's opinion was not inconsistent with other "normal exams," as the ALJ claimed. AR 24. The ALJ did not, in rejecting Dr. Ales's opinion, note which exams she found inconsistent, but the previous exams she described as "normal" opine on Ms. Creamer's cardiovascular and pulmonary health, AR 407, 425, range of motion, AR 292, 590, and respiratory capabilities, AR 431. These are not inconsistent with Dr. Ales's findings, which claim that patient cannot stand or walk without pain but has no limits moving her head, neck, arms, or fingers. AR 363–64. Dr. Ales's opinion seems at first glance to be inconsistent with Ms. Creamer's description of her regular activities, as the ALJ found, but upon closer examination the contradictions dissipate. Dr. Ales said Ms. Creamer could not walk a city block *without pain*—Ms. Creamer's testimony that she walks her beloved dogs "a short distance" rather than foist the burden on her ailing elderly parents, AR 57, is not an indication that she does so without pain. She even clarified that she could only walk "maybe a block" depending on what her feet are doing. AR 58. Her testimony that she needs to be "really, really careful" lifting anything over 20 pounds, and that doing so hurts, AR 57–58, is not a claim that she can regularly lift things under 20 pounds. Given the supportability and consistency of Dr. Ales's opinion, sufficient evidence does not exist to find it unpersuasive.

An ALJ is required to explain her analysis of the three secondary factors for evaluating medical opinions—relationship with the claimant, specialization, and other factors—when confronted with two or more opinions that are equally persuasive. 20 C.F.R. 404.1520c(b)(2). The ALJ found Dr. Greenslade's opinion partially persuasive, even though she did not label it as such. To the extent she found Dr. Ales's opinion totally unpersuasive instead of partially persuasive, she erred. Because the opinions of Drs. Greenslade and Ales were equally

persuasive, the ALJ had to explain her weighing of the three secondary factors. She did not do so, and so the case must be remanded for further consideration.

## IV.   ORDER

For the aforementioned reasons, the Court GRANTS Ms. Creamer's application (ECF No. 12) and REMANDS for further proceedings not inconsistent with this opinion.

DATED this 20th day of December, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge